LOGAN CLARK; Plaintiff in Error, *v.* THE PACIFIC RAILROAD, Defendant in Error.

*Contract — Bailment — Carriers.* — A party can recover damages only when they are the natural and necessary consequence of the act complained of. The act of public enemies is an excuse to a carrier for a loss of goods delivered to him, if the loss was not occasioned by his own negligence or want of proper care. The carrier is bound to transport and deliver the goods within a reasonable time and without unnecessary delay, but his failure so to do will not make him responsible for losses not occasioned by such delay.

*Error to St. Louis Court of Common Pleas.*

*Hicks & Doniphan,* for plaintiff in error.

I. Whenever a charter is granted for the purpose of constructing a railroad, and the corporation is clothed with the

power to take private property in order to carry out the object, it is an inference of law, from the extent of the power conferred and the subject matter of the grant, that the road is for public accommodation—Inabitants of Worcester v. The Western R.R. Co., 1 Am. Railw. C., 350 ; Sanford v. Railway Co., 24 Pa. 378; Weibert v. N. Y. & Erie R.R. Co., 2 Kern. 246 ; Pierce on Am. R.R. Law, 414–15.

II. The public being so entitled to these advantages, it results from the nature of the right that the benefit should be extended to all alike ; that no special favors should be granted to any man, or set of men, and denied to others.—See above authorities, and especially 24 Penn. 378.

III. The special stipulation in charters for the purpose of securing those rights are placed there out of abundance of caution, and affirm nothing more than a common right to equal justice which exists independent of such provision.— See above authorities to this point, and also Blackmore v. Clamorganshire Navigation Co., 1 Myl. & K. 162.

IV. Although the defendant has the power to regulate the manner of transportation on its road, yet such power does not carry with it the right to exclude any particular individual for any length of time whatever, or to grant exclusive privileges in any kind of freight or live stock to others.

V. A regulation to be valid must operate on all alike. If it deprives any persons to equal benefits to the use of the road for ever so short a time, or grants exclusive privilege for any length of time to the shippers of freight of any kind offered on the road for transportation, it is against law and void.

VI. Although there are statutory provisions that in a manner define the duties and liabilities of defendant in all these cases, yet there are duties and liabilities other than those enunciated in the statute which it is bound to do and perform ; among which is one that when freight, from any cause or causes, accumulates at the stations and stock-yards on the road beyond the capacity of the road to carry away in a reasonable time after the same is offered, it is its duty

to carry away such accumulated freight and live stock in the order of time in which it is offered at the several stations and stock-yards on the road ; that is to say, that the freight and live stock first offered for shipment at any of the stations or stock-yards on the road shall be first shipped—24 Pa. 378 ; 2 Kernan, 245 & 252.

VII. It was the duty of defendant to provide sufficient. accommodation and rolling stock to carry off all the freight and live stock that was or is offered for transport on the road within a reasonable time after the same was and is offered.—See authorities first above cited ; R. C. 1855, p. 435, § 44.

VIII. The defendant as a common carrier for hire is subject to the same rules and regulations, to the same duties and liabilities, that common carriers for hire by land in wagons or coaches and by inland navigation on our great rivers are—Powers v. Davenport, 7 Blackf. (Ind.) 716; Edw. on Bail. 465 ; 10 Ohio, 65 ; 19 Ills. 136 & 578.

IX. That it was the duty of defendant, when its cars were offered for the purpose of transporting freight, to see that the car or cars it affixed were in a suitable condition to transport the freight put therein to the station or place designated by the owner—Ang. on Carr. — ; Lyon v. Wills, 5 East, 428 ; Campbell v. Morse, 1 S. C. 468 ; Edw. on Bail. 467 ; 10 Mo. 6.

X. That the defendant was an insurer of the goods for their safe delivery against all but the excepted perils, and that the switching off of the cars that contained the goods of plaintiff and detaining them twenty-four hours was a deviation that rendered the defendant liable for the subsequent loss of the goods—5 Bing. 220-4 ; 10 Mo. 1 ; Edw. on Bail. 465-6.

X1. The defendant was guilty of a deviation, or of a detention in the nature of a deviation, in switching off the car that contained the goods of plaintiff and leaving them at Jefferson City, as shown by the proof, and are hence liable for any subsequent loss, no matter from what cause the same

may have happened—5 Bing. 220 ; 10 Mo. 7 ; Edw. on Bail. 465 ; 9 Mass. 435 ; 1 Gal. 444 ; 7 Blackf. 716 ; 10 Mo. 6 ; 28 Mo. 328–9 ; 11 Mo. 309.

*Leighton* and *Glover· & Shepley*, for defendant in error.

I. The duty of a carrier is to transport safely, and to transport within a reasonable time—Cooper v. Hudson Riv. R.R., 6 Duer, 375 ; Weibert v. N. Y. & Erie R.R.,19 Barb. 36 ; S. C. 2 Kern. 251 ; Denny v. N. Y. Central R.R., 15 Gray (Mass.) 481.  The first duty is absolute, but is excused by the act of God or the public enemy—Denny v. N. Y. Central R.R., 15 Gray, 481 ; Cooper v. Hudson Riv. R.R., 6 Duer, 375 ; Ang. on Carr. 200.  The second (that of transporting within a reasonable time) is relative, and in each particular case depends on its own particular circumstances ; when delay is not the result of a failure to use reasonable diligence under the circumstances, the delay is excused—Cooper v. Hudson Riv. R.R., 6 Duer, 375 ; Weibert v. N. Y. Erie R.R., 19 Barb. 36 ; S. C. 2 Kern. 251 ; Parsons v. Hardy, 14 Wend. 216 ; 12 Barb. 310 ; Bradwell v. Butler, 6 McLean, 296 ; Sto. on Bail. § 509 ; Fland. on Ship. 312 ; Ang. on Carr. 283, 289 ; Hodly v. Clark, 8 T. R. 259.

In determining whether delay is reasonable or excusable, there is no better test than that of good faith in expediting the carriage under all the actual circumstances—Galena & Chicago U. R.R. v. Rall, 18 Ills. 490 ; see Missouri Act of Feb. 10, 1864, § 4.

II. The statutes simply interpret the common law.  Our statute is substantially (and almost *verbatim*) the same as that of New York, Illinois, Ohio, &c.  In these States, the idea that a railroad company is bound, under the statutes, to be ready at all events to carry whatever is offered immediately is distinctly repudiated—19 Barb. 36; 2 Kern. 251; 18 Ills. 490.  The Illinois and New York statutes were directly before the court and construed in these cases.

III. It is the proximate cause of loss that determines liability—Denny v. N. Y. Central R.R., 13 Gray (Mass.) 481 ;

Morrison v. Davis, 20 Penn. 175; 2 Pars. on Cont. 456, 1st ed.; 2 Greenl. Ev. § 256; Ang. on Carr. §§ 200–1; Sto. on Bail. § 526; Hayne v. Corbett, 2 Bing. —; Greene v. Eustice, — Peake, 212; Walters v. Merchants' Ins. Co., 11 Pet. (U. S.) 213.

IV. It is absurd to apply the law of deviation in marine shipments to this case. The evidence is undisputed that there was no through train upon defendant's road. The trains were made up at Sedalia, Jefferson and St. Louis as completely as if these had been termini of different roads; there was no such thing as a freight train going in its entirety from Sedalia or Warrensburg to St. Louis. There is an essential difference between delay and deviation.

V. If there is unreasonable delay, an action will lie for the delay; but the injury from delay and the injury from loss are entirely distinct. The law is clearly stated in Denny v. N. Y. Central R.R., 13 Gray, 481, a case much resembling this—Powers v. Mitchell, 3 Hill (N. Y.) 545.

HOLMES, Judge, delivered the opinion of the court.

This action is brought to recover the value of goods of the plaintiff, which were received by the carrier at Sedalia to be transported on the railroad and delivered to the plaintiff at St. Louis.

On the arrival of the train at Jefferson City the cars in which the plaintiff's goods were carried were detached from the train and left there for one day, and other cars were taken up in their place and carried through safely to St. Louis in that train, and upon the arrival of those cars which had been left, at Miller's Landing, on the train of the next day, the whole train was burned by the public enemy and the plaintiff's goods were lost. The petition goes upon the ground that the defendant had failed to transport and deliver the property according to contract. The defence was that the goods were lost by the act of public enemies, for which the defendant was not responsible. That the defendant was not liable for a loss arising from that cause alone may be taken

as admitted. But it is insisted on the part of the plaintiff that there was an inexcusable delay of some twenty-four hours at Jefferson City, and that but for that delay the train with the plaintiff's goods would have gone through safely and no loss would have occurred.

Much was said upon the argument in reference to the order of priority in which the carrier was bound to receive and transport goods offered for transportation on the railroad, and it was urged that in making up the train at Jefferson City the defendant had no right to leave cars out of the train which had arrived there and take up other cars at that place in their stead. There not being engines enough to carry forward the whole in the same train that day, two or three cars containing the plaintiff's goods were left, and two or three other cars loaded with hemp and tobacco were taken into the train and went safely through. This arrangement was made by the conductor. It does not appear for what special reason this was done, further than that all the cars could not be taken and that the conductor saw proper to take those which were taken. It does not appear whether the cars which were thus taken up at Jefferson had arrived there on a previous train from the west, or were cars which had been loaded with goods received for transportation at that station, nor what was the order of preference, if there was any, in point of time, as between the goods received at Sedalia and those received at Jefferson City. So far as this question of priority is concerned, there was nothing in the evidence to show that the one set of cars had any preference or priority in the order of time over the other. Nor do we think this matter was at all material to the determination of the case. The conductor did not know what the cars which were left behind contained. He appears to have acted solely upon his own judgment and discretion in making up and forwarding the train. Nothing to the contrary appearing, it may be presumed that he performed this duty in a proper manner.

There is really no question of priority in the case. The complaint is not that the plaintiff's goods were not received

13—VOL. XXXIX.

for transportation in the order of priority in which they were offered, whether with reference to the particular station where they were received, or with reference to all the stations along the road. The goods were actually received and the transportation of them had commenced, the relation of common carrier existed, and was to end only in the safe delivery of the goods; and the only real question there can be in the case, is whether the contract was performed or not, or if not, whether there was any avoidable excuse for its nonperformance.

The ground of the complaint is not that the plaintiff has been damaged in consequence of the negligence or inexcusable delay in respect to the time of delivery, but that the goods were never delivered at all; and the reason assigned for that is, that the property was destroyed by the public enemy and by a cause for which the defendant is not responsible.

It is said that if the cars had gone forward on that day they would have arrived in safety, and that, therefore, the defendant is responsible for the loss which happened. The carrier was not bound to keep the cars moving onward in the same train at all events. In respect to the time of delivery, the defendent was responsible only for due diligence, and was only bound to transport and deliver the goods in a reasonable time and without unnecessary delay—Parsons v. Hardy, 14 Wend. 215. The evidence fails to show any unreasonable and unnecessary delay for which the defendant might have been held liable if any damage had been thus occasioned. But even if the delay were inexcusable, it was not the cause of the loss. There was no relation of cause and effect between that delay and the destruction of the goods by the public enemy. The loss was consequential on the delay in no other sense than that of being merely subsequent in time. The goods arrived safely on the next day at Miller's Landing. No damage had been done by that delay. Then the act of the public enemy destroyed the property. It was this act that occasioned the loss. As to the delay it was at most

an injury without a damage, and as to the loss it was a damage without an injury on the part of the defendant. It is a well settled rule that the wrongdoer shall be held responsible only for the proximate and not for the remote consequences of his actions, and this maxim has been applied to cases of this kind—Denny v. N. Y. Central R.R. Co., 13 Gray, 481; Morrison v. Davis, 20 Penn. 171.

It is a principle of the law of damages that they must be the natural and proximate consequence of the act complained of—Sedg. on Dam. 65; 2 Greenl. Ev. §§ 254, 256; Ang. Carr. § 201.

Though the act of God or of the public enemies be in itself alone a good defence, yet if the loss be directly brought about by reason of the negligence or want of proper care and foresight of the party himself, it would not excuse him. In such case the negligence or want of reasonable care and foresight might be deemed the proximate cause of the damage—Broom's Max. 105; 2 Greenl. Ev. § 219. And if it had been made to appear that the conductor knew of the immediate presence of the hostile forces, and had reason to believe that his train would go through safely on that day, but that there was danger that the train would be attacked and destroyed on the next day, and that he had for that reason left the plaintiff's goods behind and taken other goods instead to make sure of their safety, and had then without reasonable care and foresight proceeded with the plaintiff's goods on the next day in the face of the impending danger, there might have been some ground on which the defendant could be held liable—2 Pars. Contr. 456, 1st ed. But in the case made here we are clearly of the opinion that the defendant was not responsible.

We conclude, therefore, that there was no error in giving the defendant's instructions, and none in refusing those asked for by the plaintiff.

Judgment affirmed. The other judges concur.