SEABOARD AIR LINE RAILWAY, *Plaintiff in Error,* v. W. H. MULLIN, *Defendant in Error.*

Opinion filed Dec. 10, 1915.

1. Where in the course of transportation goods are injured by an unprecedented flood and there is no negligence on the part of the common carrier in taking care of the goods or otherwise, the loss is attributable to the flood as an Act of God and the carrier is not liable.

2. Whether a common carrier is liable for injury to goods, where, after being negligently delayed in transit, the goods, while still in transit, are injured by an act of God, such as an unprecedented flood, depends upon whether the negligent delay of the carrier has a proximate causal relation or a mere remote or casual relation to the subsequent injury.

3. A merely negligent delay in transporting goods, which delay causes the goods to be at a point in transit where they are injured or destroyed by an unprecedented flood that could not have been foreseen at the time of the delay, does not render the carrier liable for the direct consequences of the flood upon the goods, if there be no malconduct by the carrier, and negligence of the carrier in providing reasonably safe and adequate facilities for and attention to the safety of the goods does not directly contribute to the injury even though the goods would not have been at the point where they were injured, and would have escaped the flood but for the negligent delay of the carrier at a time when the flood could not have

been foreseen. Such an injury is not an ordinary natural sequence of the delay.

Writ of Error to Circuit Court, Marion County; W. S. Bullock, Judge.

Judgment reversed.

*L. N. Green,* for Plaintiff in Error;

*H. M. Hampton,* for Defendant in Error.

WHITFIELD, J.—An action was brought by Mullin against the carrier to recover damages for the loss of freight injured by a flood in transit. There was judgment for the plaintiff and the defendant took writ of error.

It appears by an agreed statement of facts that the goods were delivered to the defendant carrier at Ocala, Florida, on February 22nd, 1913, for transportation to Youngstown, Ohio, according to the terms and conditions of a bill of lading delivered to the shipper by the agent of the defendant; that the shipment was loaded on the same day and was by the defendant forwarded on the route towards its destination in the State of Ohio, arriving in Atlanta, Ga., on March 18, 1913, where it was delivered by the defendant at once to the next succeeding carrier for further transportation; that if said transportation by the defendant had been with due and reasonable speed and diligence said shipment would have arrived in Atlanta, Ga., and been delivered to the next succeeding carrier not later than February 28, 1913, instead of March 18, 1913; that on receipt of said shipment the next succeed-

ing carrier, and those carriers thereafter in the line of transportation, forwarded said shipment with all due and reasonable speed toward the ultimate destination thereof in the State of Ohio, and with no negligence which in any manner contributed to the loss or damage, as hereinafter mentioned of the aforesaid personal property; that if the defendant had transported said shipment to Atlanta, Georgia, and delivered the same to the next succeeding carrier with due and reasonable speed and dispatch the same would have arrived at its destination in the State of Ohio and been delivered to the plaintiff in time to have avoided the loss; that said shipment having arrived from Atlanta, Georgia, in due course, in the State of Ohio, was caught in the latter State in great rains and floods of water which destroyed certain portions of said shipment and badly injured other portions thereof; that the rains and floods aforesaid were the most sudden and violent ever known at or in the vicinity where said shipment was then caught and damaged as aforesaid, and they occurred at least six days after the defendant had delivered said shipment to the next succeeding carrier at Atlanta, Georgia, as hereinbefore mentioned; the coming or happening of which rains and floods it was utterly impossible for the defendant under any circumstances to have foreseen at any time prior to the delivery of said shipment to the aforesaid next succeeding carrier; that during the months of February, March, April and May, 1913, the defendant and other common carriers over whose line of road plaintiff's shipment aforesaid moved, had on file with the Interstate Commerce Commission of the United States, and in full force and effect certain tariffs or schedules of freight rates applicable to this shipment; that as a matter of fact the shipment was turned over by the representa-

tive of the plaintiff to the defendant as a carload ship-
ment, which the defendant accepted; the car was duly
sealed up at Ocala and moved forward to Youngstown,
Ohio, under that seal for the entire distance. That had
the shipment gone forward as less than a carload move-
ment it would have been subject to a number of removals
bewteen Ocala and Youngstown, aforesaid, thereby
greatly increasing danger of damage and loss thereto.
The statement of facts shows that a carload of house-
hold goods being transported in interstate commerce from
Ocala, Florida, to Youngstown, Ohio, was negligently
delayed en route before it reached Atlanta, Ga. After
leaving Atlanta and before reaching destination the goods
were injured by an unprecedented flood—an act of God—
which could not reasonably have been foreseen when the
negligent delay occurred. If there had been no delay in
the transportation before reaching Atlanta, the shipment
might have been completed without injury from the flood.

The liability of a common carrier of goods is that of
an insurer; and in cases of loss of or injury to goods en-
trusted to it for transportation no excuse avails the car-
rier, except that such loss or injury was caused by the
act of God, or by the public enemies of the State or by
the sole fault of the shipper or his agent. 1 Moore on
Carriers 306. A common carrier of goods is an insurer
against all risks of loss or injury, except those resulting
directly from the act of God or the public enemy and with-
out the interventon of human agency. Clyde Steamship
Co. v. Burroughs, 36 Fla. 121, 18 South. Rep. 349.

The only acts of God that excuse common carriers
from liability for loss of or injury to goods in transit are
those operations of the forces of nature that could not
have been anticipated and provided against and that by

their superhuman force unexpectedly injure or destroy goods in the custody or control of a common carrier. See 4 R. C. L., p. 709; Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 South. Rep. 732. See also 13 M. A. L. 79.

Where in the course of transportation goods are injured by an unprecedented flood and there is no negligence on the part of the common carrier in taking care of the goods or otherwise, the loss is attributable to the flood as an act of God and the carrier is not liable. Norris v. Savannah, F. & W. Ry. Co., 23 Fla. 182, 1 South. Rep. 475, 11 Am. St. Rep. 355. But where the flood should have been anticipated in time to save the goods, or the carrier was negligent in not protecting the goods, or exposed the goods to the flood, or tortiously withheld the goods, or so deviated from the proper route as to amount to a conversion of the goods, or the negligence of the carrier contributes directly to the injury, or the carrier fails to provide reasonably adequate and safe facilities which directly contributed to the injury, the carrier is liable. See National Rice Mill Co. v. New Orleans & N. E. R. Co., 132 La. 615, 61 South. Rep. 708; Wabash R. Co. v. Sharpe, 76 Neb. 424, 107 N. W. Rep. 758; Michaels v. N. Y. Cent. R. R. Co., 30 N. Y. 564; Wolf v. American Express Co., 43 Mo. 421; New Brunswick Steamboat Co. v. Tiers, 24 N. J. L. 697; Crosby v. Fitch, 12 Conn. 410; Henry v. Atchison, T. & S. F. R. Co., 83 Kan. 104, 109 Pac. Rep. 1005; Davis v. Wabash, St. L. & P. Ry. Co., 89 Mo. 340, 1 S. W. Rep. 327; Pruitt v. Hannibal & St. Joseph R. Co., 62 Mo. 527; Richmond & Danville R. Co. v. Benson, 86 Ga. 203, 12 S. E. Rep. 357; 4 R. C. L. p. 718; Pinkerton v. Missouri Pac. Ry. Co., 117 Mo. App. 288, 93 S. W. Rep. 849; Wabash

Railroad Co. v. Sharpe, 76 Neb. 424, 107 N. W. Rep. 758; McGraw v. B. & O. R. R. Co., 18 W. Va. 361; Hewett v. Chicago, B. & Q. Ry. Co., 63 Iowa 611, 19 N W. Rep. 790; St. Louis & S. F. R. Co. v. Dreyfus, 42 Okla. 401, 141 Pac. Rep. 773; Bell v. Union Pac. R. Co., 177 Ill. App. 374; Thomas v. Lancaster Mills, of Clinton, Mass., 71 Fed. Rep. 481, 19 C. C. A. 88; Texas & P. R. Co. v. Couturie, 135 Fed. Rep. 465, 68 C. C. A. 177; Atchison, T. & S. F. Ry. Co. v. Madden, Sykes & Co., 46 Tex. Civ. App. 597, 103 S. W. Rep. 1193. See also Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 So. Rep. 732, 20 L. R. A. (N. S.) 92; Town of DeFuniak Springs v. Perdue, 69 Fla. 326, 68 South. Rep. 234.

In Read v. Spaulding, 30 N. Y. 630; Green-Wheeler Shoe Co. v. Chicago, R. I. & P. Co., 130 Iowa 123, 106 N. W. Rep. 498, 5 L. R. A. (N. S.) 822; Bibb Broom Corn Co. v. Atchison, T. & S. F. R. Co., 94 Minn. 269, 102 N. W. Rep. 709, 69 L. R. A. 509, 110 Am. St. Rep. 361; Alabama Great Southern R. Co. v. Quarles & Couturie, 145 Ala. 436, 40 South. Rep. 120; Ward v. Pittsburg, C. C. & St. L. R. Co., 162 Ill. 545, 44 N. E. Rep. 888, and other somewhat similar cases, the courts hold that when there is a negligent delay by a common carrier in transporting goods, and subsequently before reaching destination the goods are injured by an act of God that could not reasonably have been foreseen at the time of the negligent delay, the carrier is liable. 4 R. C. L. p. 722; Moore on Carriers, p. 371. Such holdings are presumably predicated upon the theory that the delay is a concurring and approximate cause of the loss or injury, or that because of the delay the law enlarges the liability of the common carrier by withdrawing the exemption

from liability that usually exists when goods in transit are injured by an act of God.

The United States Supreme Court and the courts of a number of the States hold that a delay in transportation which places the shipment in the track of an unprecedented flood, is a remote and not a proximate cause of an injury to the shipment by the flood, and the carrier is not liable merely because of the delay. Such courts base the exemption of the carrier from liability upon the ground that the delay was too remote and that the proximate cause of the injury, to-wit: the destructive act of God could not have been foreseen and provided against as a probable result of the negligent delay. In this view the carrier is held not liable even though the injury would not have occurred but for the previous delay in transportation which caused the shipment to be in the track of the flood. See Railroad Company v. Reeves, 10 Wall. 176; St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223, text 237, 11 Sup. Ct. Rep. 554; Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 135 Fed. Rep. 135; Scott v. Railway Co., 19 Fed. 56; Daniels v. Ballantine, 23 Ohio St. 532; Y. & M. V. Co. v. Millsaps, 76 Miss. 855, 71 Am. St. Rep. 543, 25 South. Rep. 672; Herring v. Railway Company, 101 Va. 778; Morrison v. Davis & Co., 20 Pa. St. 171, 57 Am. Dec. 695; Rodgers v. Missouri Pac. Ry. Co., 75 Kan. 222, 88 Pac. Rep. 885, 10 L. R. A. (N. S.) 658; Sauter v. Atchison, T. & S. F. R. Co., 78 Kan. 331, 97 Pac. Rep. 434; Grier v. St. Louis Merchants Bridge Terminal R. Co., 108 Mo. App. 565, 84 S. W. Rep. 158; Armstrong, Byrd & Co. v. Illinois Cent. R. Co., 26 Okla. 352, 109 Pac. Rep. 216; Hunt v. Missouri K. & T. Ry. Co. of Texas, (Tex. Civ. App.) 74 S. W. Rep. 69; International & G. N. R.

Co. v. Bergman, (Tex. Civ. App.) 64 S. W. Rep. 999; Denny v. New York Cent. R. Co., 13 Gray (Mass.) 481, 74 Am. Dec. 645; 4 R. C. L. 721; 1 Hutchinson on Carriers (3rd Ed.) § 297, *et seq;* Moffatt Commission Co. v. Union Pac. R. Co., 113 Mo. App. 544, 88 S. W. Rep. 117; Lamar Mfg. Co. v. St. Louis & S. F. R. Co., 117 Mo. App. 453, 93 S. W. Rep. 851; Extinguisher Co. v. Railway, 137 N. C. 278; Lightfoot v. Railway, 126 Mo. App 532; 2 M. A. L. p. 125.

Interstate shipments of freight are subject to the paramount regulations of Congress. One of the regulations prescribed by an Act of Congress is "that any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass." Within the meaning of the quoted Act of Congress, was the injury to the goods "caused by" any of the railroad companies to which they were intrusted en route?

Treating the interstate shipment under the Federal law or otherwise as involving only one transportation from the point of origin to destination, though different carriers severally covered portions of the entire route, the liability of the defendant initial carrier is no greater than it would be if it transported over the entire route.

Whether a common carrier is liable for injury to goods, where, after being negligently delayed in transit, the goods, while still in transit, are injured by an act of God, such as an unprecedented flood, depends upon

whether the negligent delay of the carrier has a proximate causal relation or a mere remote or casual relation to the subsequent injury.

At common law, in the absence of a binding contract otherwise fixing liability, a common carrier is, with certain exceptions, liable as an insurer to a shipper for losses of or injuries to goods being transported. If the losses or injuries are caused by an act of God that could not have been foreseen and from which the carrier could not by the exercise of due care protect the goods, the carrier is not liable. But if prior to a loss of or injury to goods in transit the conduct of the carrier constitutes in fact or in law a tortious conversion of the goods, the carrier is liable as for the unlawful conversion, even though the goods are subsequently injured or destroyed by an unforeseen and overpowering act of God. And if negligence or fault of the carrier contributed proximately to an injury or loss that was directly caused by an act of God, the carrier is liable if the loss or injury followed in ordinary natural sequence from, or was a natural and probable result of, the carrier's negligence or fault. In the latter class of cases, the liability of the carrier is for a negligent breach of contract or legal duty; and the rights of the parties are determined by the rules of law relative to actionable negligence.

Actionable negligence exists when a loss or injury to one without fault results directly from another's mere negligence, or when the loss or injury sustained by one is such as results in ordinary natural sequence from the negligence, or such as naturally and ordinarily should have been regarded as a probable not as a merely possible result of the simple negligence of another. Conversely when the loss or injury is not a direct result of the mere

negligence, and the loss or injury is not a natural ordinary sequence or such as naturally and ordinarily should have been regarded as a probable, and not a merely possible result of the simple negligence, the negligence is not actionable. See 2 M. A. L. p. 114, *et seq.* If an independent efficient cause intervenes between the negligence and the injury, and the original negligence does not directly contribute to the force or effectiveness of the intervening cause, the original negligence is not regarded as a proximate cause of the injury, even though the injury might not have occurred but for the original negligence. A proximate cause stands next in causal relation to the effect. Chicago & Eastern Illinois R. R. Co. v. Heerey, Adm'r., 105 Ill. App. 647; Perkins v. Morgan Lumber Co., 68 Fla. 503, 67 South. Rep. 126; Illinois Cent. Ry. v. Siler, 229 Ill. 390. A proximate cause produces the result in continuous sequence, and without which the result would not have occurred. Ramsbottom v. Atlantic Coast Line R. Co., 138 N. C. 38, 50 S. E. Rep. 448. These principles are applicable where injuries occur from mere negligence that is a breach of contract or of a public duty by a common carrier, where no malconduct is involved, and the negligence is not in failing to provide reasonable facilities required by law or to give proper attention which directly contributed to the injury. In this case the carrier was merely negligent in delaying the shipment, there being no conversion in law or deviation from the proper route or malconduct or lack of reasonably adequate and safe facilities. There was subsequent to the delay "no negligence which in any manner contributed to the loss or damage" as is expressly stipulated. An assumption that the goods would not have been injured had the carrier not negligently delayed the

shipment en route before the flood happened, will not con-
clusively show liability of the carrier, since the negligent
delay did not directly cause or contribute to the injury
and had no causal relation to and did not contribute to
the injury or to the effectiveness of the flood, the direct
cause of the injury, and any character of injury to the
shipment from an unprecedented flood could not reason-
ably be regarded as being an ordinary natural sequence or
as naturally and ordinarily a probable result of the merely
negligent delay during a period when there was nothing
to foretell an unusual flood on the route.   The shipment
being household goods, loss of their   use for a period
equal to the delay, and perhaps other losses, would be
natural and ordinary results of the delay in their transit
that should reasonably have been anticipated for which
the carrier would be liable in damages; but injury or loss
from an unprecedented flood overtaking them before ar-
riving at their destination was not an ordinary natural
sequence of the delay, and such an injury was not
naturally or ordinarily a probable result of a delay
in transit that should reasonably have been anticipated
by the carrier, when there was no reason in experience or
in a warning at the time of the delay, for anticipating
the unprecedented flood that subsequently injured the
goods before they reached their destination.   It is ex-
pressly agreed that "the coming or happening of which
rains and floods it was utterly impossible for the defend-
ant under any circumstances to have foreseen   at any
time prior to the delivery of said shipment to the afore-
said next succeeding carrier;" and "that the rains and
floods aforesaid were the most sudden and violent ever
known at or in the vicinity where said shipment was then
caught and damaged as aforesaid."

Common carriers are not liable in damages for injuries to goods in transit caused solely by an act of God that could not have been foreseen. This exemption from liability is allowed by law because of the assumed inability of the carriers to provide against the consequences of an act of God that could not be foreseen and that is overpowering in its destructive force and effect. A flood of unprecedented volume and destructive force may be such an act of God as relieves a common carrier from its damaging effect upon goods being transported by the carrier, when the flood could not have been anticipated or its effect avoided by the exercise of reasonable foresight and diligence based upon common experience and available information. This rule is predicated upon the principle that, as a carrier cannot reasonably be required to foresee the appearance and consequences of an act of God or to provide against consequences of an unforeseen and overpowering act of God, it should not be held liable in damages for the injurious effects of an act of God upon the goods being transported by the carrier, when the carrier does not contribute to the injury or loss by some malconduct, such as acts amounting to a conversion in law of the goods by an unnecessary deviation, or by a tortious withholding of the goods or otherwise, and when negligence of the carrier in providing reasonably adequate and safe facilities and a proper use of them for the discharge of its duty as a common carrier does not directly contribute to the loss or injury.

A merely negligent delay in transporting goods, which delay causes the goods to be at a point in transit where they are injured or destroyed by an unprecedented flood that could not have been foreseen at the time of the delay, does not render the carrier liable for the direct conse-

quences of the flood upon the goods, if there be no mal-conduct by the carrier, and negligence of the carrier in providing reasonably safe and adequate facilities for and attention to the safety of the goods does not directly contribute to the injury, even though the goods would not have been at the point where they were injured, and would have escaped the flood but for the negligent delay of the carrier at a time when the flood could not have been foreseen. Such an injury is not an ordinary natural sequence of the delay.

The rule in this State is that damages may not be recovered for all the injurious consequences that might be shown to have resulted from mere negligence in performing a stipulated or legal duty or service. But where there is negligence, damages may be recovered for such injurious consequences as follow in ordinary natural sequence from the negligence, or such as reasonably should have been contemplated as an ordinary, natural and probable result of the negligence had proper attention been given to the subject. The particular injury sustained need not have been anticipated. Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 South. Rep. 732; Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 South. Rep. 209; Hildreth v. Western Union Tel. Co., 56 Fla. 387, 47 South. Rep. 820; Western Union Tel. Co. v. Milton, 53 Fla. 484, 43 South. Rep. 495; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manufacturing Co., 27 Fla. 1, 9 South. Rep. 661; Brock v. Gale, 14 Fla. 523. See also Moore v. Lanier, 52 Fla. 353; Janes v. City of Tampa, 52 Fla. 292.

In determining the liability of common carriers for goods injured or lost in transit by an act of God the true rule is that in order to relieve the carrier from lia-

bility, the act of God must be one that could not have been foreseen, and must be the sole proximate cause of the loss or injury. But where the carrier is otherwise without fault, and its mere delay in transportation causes the goods to be where they are injured by an act of God, the carrier is liable, only when the injury resulted from the delay by ordinary natural sequence, or where the injury is of a character that is within the probable consequences of the previous negligent delay of the carrier; for otherwise the carrier's liability would be extended to losses that it is not by law required to anticipate and provide against. See Merritt Creamery Co. v. Atchison, T. & S. F. R. Co., 139 Mo. App. 149, 122 S. W. Rep. 322. As the injury to the goods in this case was directly caused by an admittedly unprecedented flood—an excusing act of God—to which injury the defendant did not directly contribute, and as such flood could not have been anticipated or the injury regarded as resulting by ordinary natural sequence, or as a natural and probable result of the preceding delay in transit, the injury was not "caused by" the defendant, within the meaning of the law, and the defendant is not liable.

The Interstate Commerce Act does not render carriers liable for injuries to shipments that are caused by an act of God. Cleveland, C. C. & St. L. Ry. Co. v. Hayes,—Ind.—,104 N. E. Rep. 581. The delay in transportation prior to the injury was "caused by" the defendant, but the injury to the goods was "caused by" an unprecedented flood—an act of God—the preceding negligence of the carrier in delaying the shipment having merely a casual relation and not a causal relation to the act of God and the injury.

The judgment is reversed.

TAYLOR, C. J., and SHACKLEFORD and ELLIS, JJ., concur.

COCKRELL, J., absent on account of sickness.