## Wytheville.

## Merchants and Miners Transportation Company v. L. J. Upton and Company, Incorporated.

### June 10, 1920.

1. Carriers—*Act of God—Negligence Concurring With Act of God.*— The rule is that a carrier is exempt from liability if the act of God is the proximate and sole cause of the loss; but it is equally well settled that, even though the immediate cause of the loss is an act of God, nevertheless, if the negligence of the carrier mingles with it as an active and co-operative cause, the carrier is still responsible. If the negligence of the carrier concurs in and contributes to the loss, the carrier is not exempt from liability, even if the immediate damage is caused by the act of God.

2. Carriers—*Liability for Delay in Transportation—Act of God.*— While it may be said that by the weight of authority the general rule is that the carrier will not be held responsible for mere delay in the transportation, yet where negligent delay in the transportation creates a condition which concurring with an act of God causes injury to the goods shipped, such as excessive cold weather causing the freezing of fruit or vegetables, the carrier is liable for the loss of the property.

3. Carriers—*Act of God—Negligence of Carrier Concurring With Act of God—Question of Law or Fact—Case at Bar.*—Plaintiff being notified by defendant carrier of the arrival of five carloads of Irish potatoes directed the carrier to deliver them to various connecting carriers, which the carrier promised to do promptly and this was the duty of the carrier under its published tariff. After this direction the weather which was already cold, became colder. Five days later, the carrier addressed a communication to the plaintiff, saying that they were holding the potatoes at its risk, and asking it to arrange to take delivery promptly to avoid freezing. Upon previous occasions, when the carrier could not make prompt delivery, it would request the plaintiff to haul the potatoes away from its dock and this would be done. The commodity, potatoes, was one especially liable to injury from freezing, and the question

presented was whether or not, under these circumstances, the alleged negligence of the carrier was an active concurring and contributing cause of the loss from the freezing of the potatoes, so as to make it liable, or whether the freezing weather was the sole proximate cause thereof so as to exempt it from liability. The carrier claimed, as a matter of law, that it was exempt from liability. The trial court, under proper instructions, submitted the question to the jury and its action in so doing was sustained by the Supreme Court of Appeals.

4. CARRIERS—*Connecting Carriers—Delay in Delivery—Connecting Carrier Failing to Call for Goods.*—Plaintiff directed defendant carrier to deliver a carload of potatoes to a connecting carrier, and notified defendant that the connecting carrier would send its own steamer therefor. The only duty resting upon the defendant carrier as to this carload of potatoes was to hold them in its warehouse until the steamer of the connecting carrier called for them. Therefore, the defendant carrier was not liable for a loss from the freezing of the potatoes due to delay by the connecting carrier in calling for them.

Error to a judgment of the Circuit Court of city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hughes, Little & Seawell,* for the plaintiff in error.

*E. R. F. Wells* and *Jno. Upton,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The Merchants and Miners Transportation Company, hereinafter called the company, complains of a judgment in favor of L. J. Upton & Company, Inc., hereinafter called the plaintiff.

The pertinent facts are, that the plaintiff had five car-

loads of Irish potatoes shipped to it at Norfolk. They arrived December 24 and 26, and on receipt of notice of their arrival the plaintiff directed the company to deliver them to various connecting carriers at Norfolk—three cars to the Atlantic Coast Line Railroad Company, one car to the Southern Railway Company, and one car to the People's Navigation Company. The company conducted a barging service in the Norfolk harbor, for redelivery of shipments to connecting carriers, as a part of their business as a transportation company, as is shown by their published tariff. After this direction the weather, which was already cold, became colder. In the meantime the potatoes were piled in the company's warehouse, covered with tarpaulins, and surrounded by freight, in order to protect them from freezing. Notwithstanding these precautions many of the potatoes were frozen, and this action was instituted to recover the loss thereby occasioned.

On December 26, when notified of their arrival, the plaintiff 'phoned a delivery clerk of the company directing the disposition to be made of the potatoes, which was at once followed by similar written instructions, and considering the evidence as this court is required to consider it, it appears that the delivery clerk assured the plaintiff that the potatoes would be reshipped promptly, and this was the duty of the company under its published tariff. The plaintiff relying upon this assurance, gave the matter no further attention. On December 29 the temperature was seventeen degrees above zero, and by midnight it was 11; on the 30th the temperature ranged from twelve to five degrees, and on the 31st, from sixteen to nine degrees. Then, on the morning of December 31, the company addressed a communication to the plaintiff, saying that they were holding the potatoes on the wharf at its risk, and concluding with this language: "Will you please arrange to take delivery promptly to avoid freezing." This was the first intimation

that the plaintiff or any of its agents had received that the potatoes had not been delivered to the connecting carriers in accordance with the instructions given December 26, which instructions it had been assured would be promptly obeyed. It appears that potatoes can stand a temperature of from eighteen to twenty degrees without damage. It appears also that upon previous occasions, when the company could not make prompt deliveries, it would request the plaintiff to come down and haul the potatoes away from the dock, and that this would be done; and this custom or understanding is confirmed by the letter just referred to, in which, on December 31, the plaintiff was asked to take delivery to avoid freezing.

The company assigns three errors, but they each present the same proposition—that is, that the plaintiff's loss was not properly attributable to any negligence on its part but to an act of God, for which the company is not responsible.

[1] The question has been so frequently the subject of litigation and the cases so fully analyzed and annotated that no extended discussion of them is regarded as necessary. The rule is that a carrier is exempt from liability if the act of God is the proximate and sole cause of the loss; but it is equally well settled that, even though the immediate cause of the loss is an act of God, nevertheless, if the negligence of the carrier mingles with it as an active and co-operative cause, the carrier is still responsible. If the negligence of the carrier concurs in and contributes to the loss, the carrier is not exempt from liability, even if the immediate damage is caused by the act of God.

In *Wolf* v. *American Express Company*, 43 Mo. 421, 97 Am. Dec. 406, in which the carrier was held responsible for the freezing of wine, this is said: "Had not the negligence and inattention of the defendant co-operated with the cold, the loss would not have taken place nor the damage occurred. The carrier must not only exercise diligence,

but he must use that degree of attention and care, which the occasion and subject committed to his trust demand. What would be sufficient care in case of ponderous articles, not liable to be deteriorated by exposure, might be the most palpable neglect in case of costly and perishable goods. His acts and exertions must be commensurate with his duties."

In the note to *Armstrong* v. *Illinois Central R. Co.*, 26 Okla. 352, 109 Pac. 216, 29 L. R. A. (N. S.) 671, this is said: "It may be laid down as a general rule of law that even where an act of God has occurred, the duty is still incumbent upon a carrier to use due and reasonable diligence to save the goods intrusted to his care, and that if he fails to do this he is liable for their loss though the primary cause of their loss was an act of God; but if he uses all the means in his power, and if, in spite of his exertions, the goods are lost or injured, he cannot be held responsible."

The later cases are cited in the note to *Seaboard Air Line Ry.* v. *Mullin*, 70 Fla. 450, 70 So. 467, L. R. A. 1916D, 988, Ann. Cas. 1918 A, 576.

[2] In *McGraw* v. *Baltimore & Ohio R. Co.*, 18 W. Va. 361, 41 Am. Rep. 697, the company was held liable for loss occasioned by freezing of Irish potatoes where they were delivered on the 13th of February in time to be shipped on the 14th, and there was a daily train. They were not shipped until the 16th, and were then frozen. While it may be said that by the weight of authority the general rule is that the carrier will not be held responsible for mere delay in the transportation, in that case the court took into consideration the peculiar circumstances, as this language from the opinion indicates: "Taking the nature of the property into consideration, its liability to be injured by freezing weather, the distance from the point of shipment to the place of destination, the daily trains between those points, the favorable condition of the weather

when the property was delivered, its liability to change at that season of the year, and the fact that at that particular time it was very changeble, I do not think that that care and diligence and foresight were exercised which are incumbent upon the common carrier. Under the circumstances the company is liable for the loss of the property, the delay being the immediate and proximate cause of the loss."

This statement is found in 10 C. J. 125: "Where the carrier relies on one of the exceptions to his common law liability, it must appear, in order to excuse him, that the exceptional cause, such as an act of God, or the like, was the immediate or proximate, and not the remote, cause of the loss. And while it must betrue, as a general proposition, that, although the carrier is in some way negligent, if such negligence does not contribute to the loss which is due to an excepted cause, the carrier is not liable, it is very generally declared that if the negligence of the carrier concurs with an act of God in producing a loss or injury, the carrier is not exempted from liability by showing that the immediate cause was the act of God, or some other excepted cause; or, as otherwise expressed, the carrier is responsible where the loss is caused by an act of God or other excepted cause, if the carrier's negligence mingles with it as an active and co-operative cause."

1 Hutchinson on Carriers (3d ed.), sec. 292, states the same doctrine, emphasizing the fact that the carrier is bound to exercise due care and diligence in view of the attending circumstances to protect the goods intrusted to him for carriage.

A pertinent case is *St. Louis & San Francisco R. Co.* v. *Dreyfus*, 42 Okla. 401, 141 Pac. 773, L. R. A. 1915D, 547. There the action against the carrier was for the loss of two shipments of bananas, and the carrier defended on the ground that it was prevented from making delivery by

a severe blizzard and snowstorm. The court recognized the general rule invoked by the carrier, but held that it was a question for the jury whether or not the carrier, by ordinary care or reasonable effort, could have delivered the goods more promptly and thereby have prevented the injury, notwithstanding the snowstorm, and that the trial court did not err in refusing to give a peremptory instruction in favor of the carrier.

The subject is discussed in a note to *Rodgers* v. *Missouri Pac. Ry. Co.*, 75 Kan. 222, 88 Pac. 885, 10 L. R. A. (N. S.) 658, 121 Am. St. Rep. 416, 12 Ann. Cas. 449; Note to *Cent. of Ga. Ry. Co.* v. *Sigma Lumber Co.*, 170 Ala. 627, 54 So. 205, Ann. Cas. 1912D, 968; *Pine Bros.* v. *Chicago, B. & Q. Ry. Co.*, 153 Ia. 1, 133 N. W. 128, 39 L. R. A. (N. S.) 640; note to *Davis* v. *Garrett*, 5 Eng. Rul. Cas. 280; 4 R. C. L. 717, *et seq.*

It is, however, claimed for the company that the case of *Herring* v. *Chesapeake Western Ry. Co.*, 101 Va. 778, 45 S. E. 322, is conclusive of the question in its favor in this court, however it may be in other jurisdictions. It is true in that case that the company is relieved from liability for mere delay, but it appeared that some of the delay was uncontrollable, and that the greater part of it was caused by the plaintiff himself.

The case of *Railroad Co.* v. *Reeves*, 10 Wall. 176, 19 L. Ed. 909, which is also relied on by the company, holds that when the damage is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier is exempt from liability, unless the defendant was guilty of some negligence in not providing for the safety of the goods.

Those cases were determined by the facts there shown to exist. So this case depends upon the proper consideration of the facts here shown.

[3] In the case in judgment, the negligence which is re-

lied upon by the plaintiff is the failure of the company to notify it that it could not perform its promise to make prompt delivery of the potatoes to the connecting carriers so that the plaintiff could co-operate in the usual way by removing them to a safer place. It is clear that it had been the habit of the company, in case of such delay, to notify the plaintiff so that it could take measures to preserve the property and to insure prompt deliveries to its customers. The potatoes were in a warehouse upon the wharf of the company in the Norfolk harbor, in the last days of December, when freezing weather might be apprehended at any time. The commodity, potatoes, was one especially liable to injury from freezing, and the question presented is whether or not, under these circumstances, the alleged negligence of the carrier was an active concurring and contributing cause of the loss so as to make it liable, or whether the freezing weather was the sole proximate cause thereof, so as to exempt it from liability. The company is claiming that the lower court erred in not determining, as a matter of law, that it is exempt from such liability, while the plaintiff is claiming that the question is one of fact which should have been submitted to the jury. The trial court, by proper instructions, sustained the plaintiff's view, and submitted the question to the jury. We have no doubt of the correctness of this ruling, whether tested by analogy, reason or authority.

[4] The jury found a verdict for the full amount claimed, $3,025, which the court reduced to $2,311.60, requiring the plaintiff to accept the reduced amount or submit to a new trial, and the plaintiff assigns this as cross-error. The reason for this reduction is that the plaintiff directed the company to deliver one carload of the potatoes to the People's Navigation Company, and notified it that the last named company would send its own steamer therefor. Inasmuch as there was no duty on the part of the company

to do more than deliver this carload when called for by the Navigation Company, the court determined that upon the evidence the defendant company was not at fault. This evidence is that the representative of the Navigation Company called at the wharf and asked if they had the potatoes. The company's delivery clerk, replied that he' didn't know; whereupon, the Navigation Company's agent called up the plaintiff's bookkeeper, got the car number and went down and looked for the car, but failed to find it. About an hour and a half later, on the same day, the representative of the Navigation Company was told that the potatoes had been located, but it was too late on that day to make the delivery and they were never again called for. The only duty resting upon the company as to this carload of potatoes was to hold them in its warehouse until the steamer of the Navigation Company called for them. The defendant company was, therefore, not in fault, and therefore, in no way responsible for this part of the loss. The court, therefore, properly reduced the verdict by $713.40, which amount was fixed by agreement of the parties litigant, as the loss thereby caused.

*Affirmed.*