493 So.2d 67 (1986)
Franklin Eugene WATERS, Appellant,
v.
ITT RAYONIER, INC., Appellee.
No. BI-347.
District Court of Appeal of Florida, First District.
August 22, 1986.
David A. Bartholf, Jacksonville, for appellant.
Robert Wilhelm, of Howell, Liles, Braddock & Milton, Jacksonville, for appellee.
SHIVERS, Judge.
Appellant Waters, plaintiff in the trial court, appeals the entry of a summary final judgment in favor of defendant ITT Rayonier, Inc. (Rayonier). We reverse on the basis that the trial court erred in concluding, as a matter of law, that Rayonier was relieved of liability by an unforeseeable independent intervening cause.
The facts of the case are as follows. On December 8, 1980, defendant Rayonier performed a "controlled burn" on a tract of land adjacent to I-95. Some time after Rayonier's field personnel had left the burn that afternoon, the wind direction shifted, causing thick smoke from the fire to blow *68 across and encompass a portion of I-95. At approximately 9:30 that evening, appellant Waters, who was employed as a truck driver by Nu-Car, Inc. (Nu-Car) encountered the smoke without warning while driving a tractor-trailer rig. Immediately upon entering the smoke, Waters' truck struck a small car which had almost completely stopped on the highway. Two of the car's three occupants were killed. Waters sustained no personal injuries, but was suspended by Nu-Car the following day and was discharged three days later for having a major chargeable accident.
On June 3, 1981, Waters filed suit against Rayonier, alleging that Rayonier's negligence caused Waters to lose his job with Nu-Car. After taking numerous depositions in that case, Waters discovered that he also had a possible claim against Nu-Car for discharging him in violation of a collective bargaining agreement between Nu-Car and the Teamsters' Union. In particular, it was discovered through the deposition of Paul McAllister, a regional manager for Nu-Car at the time of the accident, that Nu-Car may have been waiting for an opportunity to fire Waters. According to McAllister's deposition testimony, Nu-Car had developed a "bad attitude" toward truck drivers who were owner-operators (such as Waters), as opposed to company drivers. While owner-operators in general were looked upon as "mavericks" Waters was a particularly outspoken owner-operator. According to McAllister, Don Fauver, Executive Vice-President of Nu-Car, told McAllister after the accident that he was going to "make an example" of Waters.
At some point in either 1983 or 1984, Waters filed a separate action against Nu-Car. After learning of that suit, Rayonier filed a motion for summary judgment, arguing that Waters' loss of wages was caused by the independent acts of Nu-Car, relieving Rayonier of liability. That motion was granted on June 20, 1984, by Judge Giles Lewis, a Duval County Court judge sitting by special designation for Circuit Judge Major Harding. On July 2, 1984, Waters filed a motion for rehearing and an extensive memorandum of law. That motion was granted, and on December 31, 1984, Judge Lewis (still sitting for Judge Harding) entered an order reversing the prior order and vacating the summary judgment. Three days later, Judge Lewis became a circuit court judge and on May 3, 1985, Judge Harding returned to the bench. On July 19, 1985, Rayonier filed a "supplemental motion for summary judgment," claiming that Waters' answers to a request for admissions constituted "additional matters of fact that have now been admitted." The supplemental motion was heard by Judge Harding and, on August 27, 1985, summary final judgment was entered in favor of Rayonier.
Waters raises two issues on appeal of the summary judgment: (1) that the court erred in determining as a matter of law that Nu-Car's actions relieved Rayonier of liability for Waters' injuries, and (2) that the trial court erred in hearing Rayonier's supplemental motion for summary judgment. We reverse on the basis of appellant's first point on appeal.
The general rule of law regarding the first issue is that an initial tort-feasor will be relieved from liability where the plaintiff's damages were brought about by an "independent, efficient intervening cause." Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980). An intervening cause is "efficient," however, only if it is truly independent of, and not "set in motion" by, the original negligence. Gibson, supra; Loftin v. McCrainie, 47 So.2d 298 (Fla. 1950); Railway Express Agency, Inc. v. Garland, 269 So.2d 708 (Fla. 1st DCA 1972). Further, the independent intervening cause will relieve the initial tort-feasor of liability only where it was not foreseeable. Gibson, supra; Anglin v. State of Florida, Department of Transportation, 472 So.2d 784 (Fla. 1st DCA 1985). The question of foreseeability is ordinarily one for the trier of fact, Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA 1981), and only if reasonable persons could not differ as to the total absence of evidence to support any inference that the *69 independent cause was foreseeable may the court determine the issue as a matter of law. Anglin, supra.
As the supreme court explained in the Gibson case, another way to determine whether the independent intervening cause was foreseeable is to ask whether the harm which occurred was "within the scope of the danger attributable to the defendant's negligent conduct." 386 So.2d at 522. It is not even necessary that the initial tort-feasor "be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur," so long as he or she is "able to foresee that some injury will likely result in some manner as a consequence of his negligent acts." Crislip v. Holland, supra. Accord, Anglin, supra.
In the instant case, neither the issue of foreseeability nor the issue of whether Nu-Car's actions were set in motion by Rayonier's negligence was so conclusively established as to support a summary judgment in favor of Rayonier. First, Waters did admit that Fauver told McAllister, after the accident, that he was going to "make an example" of Waters. That admission does not, however, "conclusively establish" that Waters' discharge would have occurred anyway, or that the discharge was not set in motion by the occurrence of the fire and the subsequent accident. There are certainly enough genuine issues of material fact to preclude summary judgment on that point. Second, the trial court erred in concluding as a matter of law that Waters' injuries were not reasonably foreseeable by Rayonier. Although Rayonier may not have been able to foresee the exact manner in which Waters' wage loss would occur, a jury of reasonable persons might infer from the evidence that Rayonier could foresee the possibility of some injury, even the possibility of loss of wages in particular. Anglin v. State of Florida, Department of Transportation, 472 So.2d at 788.
As his second point on appeal, appellant contends that Judge Harding, in granting the supplemental motion for summary judgment, erred in reversing his predecessor, Judge Lewis, who had denied summary judgment. Since we are reversing, it is not necessary that we address this issue. Assuming Judge Harding was correct in rehearing the motion, the summary judgment should not have been granted for the reasons stated above.
Accordingly, the summary final judgment entered in favor of Rayonier is reversed and this cause is remanded to the trial court for further proceedings.
ZEHMER, J., concurs.
BARFIELD, J., specially concurs with an opinion.
BARFIELD, Judge, specially concurring:
I concur in the result only. Summary judgment in Florida requires the moving party to place the non-moving party in an evidentiary straitjacket which admits of no contrary inferences no matter how incredible. In this case, the defendant has not clearly shown that it is unforeseeable that the hazardous highway conditions would lead to the employment termination of a commercial driver who has an accident to which the hazardous conditions contributed. The fact that the case would not likely be believed by a jury is irrelevant for purposes of summary judgment.